In The United States District Court
For The Southern District of West Virginia
At BlueField

**FILED**

JUL 16 2020

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

GARY HANCOCK,
          Plaintiff

     v.                                    Civil Action No. 1:20-cv-00483

UNITED STATES
          Defendant


## COMPLAINT WITH JURY DEMAND

Comes now the plaintiff, Pro se, Filing this civil action pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680, alleging Medical negligence and Malpractice by prison Medical personell at the Federal Correctional Institution (FCI) in McDowell [County] West Virginia.

    The Following Facts are set forth in support of this Claim:

### PLRA Exhaustion Requirement

1. The plaintiff has exhausted Administrative Remedies required by the FTCA and the PLRA by submitting a tort claim for these issues to the F.B.O.P. Mid-Atlantic Regional Office within two years of the incident. In Tort Claim No. TRT-MXR-2019-07192, the Regional Office denied the plaintiff's Tort Claim in a letter dated April 16, 2020.

### Certificate Of Merit Not Required Under State Law

2.  Under W. Va. State law, plaintiff believes that he would be required to serve on the provider a

Notice of Claim and Certificate of Merit, the latter being executed under oath by a Medical professional qualified as an expert under W. Va. Rules of Evidence.

Plaintiff meets the exception to the Certificate of Merit rule because the negligence in this case is so obvious that a lay-person can easily understand it by common knowledge and experience.

Plaintiff has mailed a Notice of Claim to the Health Services Administrator at FCI McDowell but has not recieved a response. This Notice was mailed over 30 days prior to the filing of this Complaint.

## Facts

3. During the months of December 2017 through April 2018, plaintiff was housed in the Special Housing Unit (SHU) at FCI McDowell.

4. A large portion of plaintiff's Medical records can be viewed on the docket, in a case that could likely be related to this one, in a different court in the 4th Circuit. See Hancock v. Smith, Civil Action No. 7:20-CV-00225, Western District of Virginia, Roanoke, ECF Document # 7-4.

Plaintiff will refer to pages on this Docket entry to establish certain facts. (Henceforth "Smith")

5. During the month of January 2018, plaintiff complained to Medical staff of complications with his seizure disorder and depression. Medications were ordered for the plaintiff on January 25, 2018 (see, Smith, ECF # 7-4, page 128).

Levetiracetam was ordered for seizures and Sertraline for depression.

2

6.    Starting on January 30, 2018, plaintiff was given the wrong/incorrect Medication until February 5, 2018. See Smith, ECF# 7-4 pages 141-142. These Two pages are the Medication Administration Record For the time period That plaintiff was given incorrect Medication in place of levetiracetam (seizure Meds)
    The records Show that at 0600, 1 pill was taken by plaintiff on 1/30/2020, and another was taken at 1700 (5:00pm). The records go on to show that another pill was taken by plaintiff at 0600 on 1/31/2020. At this time plaintiff complained to the Nurse that he believed his Medication was wrong because the pill was bright orange in color, (Matching the plaintiff's orange SHU clothing almost exactly), and that this particular pill was normally cream-colored. The nurse at the Time, Mr. Walters, assured plaintiff that the Medication was correct, and that colors could vary.

7.  After the First pill was ingested plaintiff began to experience adverse symptoms/side-effects That gradually worsened after each dose to include: light-headedness/Faint, Stomach pain, headaches, diarrhea, Jaundiced/yellowed skin, pale Stools, Itching over entire body (no rash), and heart palpitations.

8.  See Smith, ECF # 7-4, pages 214-216. These pages show the ECG (Heart Electrode Test) results For the ECG administered on 1/24/2018.
    Plaintiff was having heart palpitations before ingesting the wrong Medication, but improper Meds intesified These severely.

9. See Smith, ECF# 7-4, Pages 124-125, Record notes plaintiff Complaining of being jaundiced/discolored after taking wrong Medication. Medical Staff Conveniently Fails to note all of plaintiff's Complaints of being given wrong Meds. On pages 124-125, Nurse States "Inmate does not appear jaundice." However, Nurse does not know plaintiff or see him on a daily basis to accurately notice a Change in his Skin Complexion. Plaintiff is already a "light-Skinned" black Male, a Complexion Frequently reFerred to as "yellow." Plaintiff noticed a Change in his own Skin Complexion that Nurse was unable to detect, or refused to document in attempt to "Cover-up" plaintiff being given wrong Medication.

10. On pages 141-142 of Medical Records in Smith, it shows that plaintiff refused the wrong Medication on the evening of 1/31/2018. This refusal plaintiff believes to be accurate because the adverse side-effects were Making him afraid. However, Plaintiff took several More doses after 1/31/2018 and Medical records have been Falsified to show that plaintiff refused all seizure Meds until 2/5/2018 - The date it was discovered, by Medical staff, that plaintiff had been ingesting wrong Meds.

Plaintiff took several more doses, even after adverse side-effects, For one primary reason: The Medication was having an amazing laxative eFFect, and plaintiff's Medical record's show that he has a history of Chronic Constipation (only in prison...). This laxative eFFect had plaintiff delusionally Convinced

that his constipation problem was caused by his seizure disorder and that these "seizure Meds" were relieving the problem.

11. The Health Services Administrator at FCI McDowell talked to plaintiff at his cell door and acknowledged that she was aware that he had been given wrong Meds. She visited plaintiff's cell when he attempted to refuse a skin TB test due to paranoia after being given wrong Meds. Plaintiff had problems with McDowell Medical Staff for trying to "Fight" to get Metamucil, and deliberate indifference should not be ruled out as wrong medications may have been purposely given. Health Services Administrator (believed to be Ms. Lucas) told plaintiff that the wrong Meds were a mistake and he would be forced to submit to a TB test if He did not comply. He complied.

12. On 2/5/2018, Nurse Mr. Alexander was delivering Medications to inmates in SHU. Plaintiff was prepared to take his [wrong] Meds again, hoping that side-effects would diminish after he got used to the Meds. Mr. Alexander passed by plaintiff's cell and plaintiff had to knock on the window to stop him and ask, "hey sir, do you have my Meds?" That's when he came back to plaintiff's cell and and told plaintiff "Oh, no. We had the wrong Medication for you."
Plaintiff asked Nurse Alexander exactly which wrong medication had he been taking, and was told that he was being given the antibiotic named Levequin, also called Levofloxacin.

13. Please See Medical Records in Smith, page 142. The RX# for the plaintiff's Seizure Meds was 602456-LEX. You will see that on 2/5/18 that RX# 602456-LEX is listed saying "Medication not available." How is this so when plaintiff's prescription supposedly arrived when plaintiff began taking his [wrong] Medication on 1/30/18? This is so because on 2/5/2018, Nurse Alexander told plaintiff that his Medication would have to be re-ordered due to the wrong Meds being in bottle with plaintiff's name on it. Alexander said that on the outside of the bottle, the proper Medication, Levetiracetam, was printed; but on the inside of the bottle there was a small piece of paper/document saying that the Medication was actually, Levequin/Levo-Floxacin and listing drug facts. Alexander says this is how he discovered that plaintiff was ingesting wrong Medication. On page 142 of ECF 7-4 in Smith, Plaintiff's Meds Miraculously became "not available" when Mr. Alexander noted that the wrong Medication was in the pill bottle with plaintiff's name on it.

14. Nurse Mr. Walters told plaintiff that the Medication Mishap was the fault of the pharmacist who filled the prescription. Plaintiff has no way to know if this is true or who is at fault; however, Nurses had a responsibility to ensure that Medication was correct, as did pharmacist.

15. After wrong Meds were discovered, Plaintiff refused all Meds because he was in fear for his life and scarred from ingesting wrong Medication.

6.

See, Smith ECF#7-4, page 119, Records stating "inmate refusing Medications levetiracetam, sertraline, states 'not taking while in SHU', will not explain,".

<u>Claims For Relief</u>

16. The neglegent acts of F.B.O.P. Medical personell in filling plaintiff's prescription with the wrong Medication, and delivering it to his cell door for several days, Even while information inside the pill bottle stated that the Medication was incorrect, Constituted the torts of Medical negligence and Malpractice. This also shows that: 1.) "The health care provider failed to exercise that degree of Care, skill and learning required or expected of a reasonable, prudent health Care provider in the profession or Class to which the health care provider belongs acting in the Same or Similar Circumstances"; and 2.) Such failure was the cause of the physical, Mental, and emotional injuries suffered by the plaintiff.

See the Medical Professional Liability Act, W. Va. Code § 55-7B-1.

17. The defendant (s), being Medical professionals, had a duty to provide plaintiff with the correct, doctor prescribed Medications, failure to do so, and giving the plaintiff an incorrect Medication, Establishes negligence and/or Malpractice on the part of Medical personell — even to the lay-person.
See eg, BanFi v. American Hospital for Rehabilitation, 207 W. Va 135, 141, 529 S.E. 2d 600, 606 (W.Va 2000) (explaining standard applied to determine when need

7

of Medical expert is excused).

## Relief Requested

The plaintiff requests relief in the form of Monetary damages for the physical, Mental/emotional injuries suffered from ingesting the incorrect Medication for several days; and for the chronic abdominal/back pain problem that has Magically appeared since the ingestion of Levequin (which is believed to be an anti-biotic for gastro-intestinal infections). This chronic problem is expounded in Smith.
     Plaintiff requests damages amounting :

     $ 995,000   or the amount Court or Jury deems appropriate to compensate plaintiff's extensive suffering, More or less.


     I, the plaintiff Gary Hancock, declare under penalty of perjury that the foregoing is true and correct.

                              Respectfully Submitted,

7/12/2020                     Gary Hancock

                              Gary Hancock 56765-037
                              United States Penitentiary
                              P.O. Box 305
                              Jonesville, VA 24263

8.

Gary Hancock 56765-037
United States Penitentiary
P.O. Box 305
Jonesville, VA 24263



KNOXVILLE TN-377

13 JUL 2020   PM 3 L

Legal
Mail

Clerk, United States District Court
Elizabeth Kee Federal Building
601 Federal Street, Rm 1000
Blue Field, WV 24701

24701-303378