IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| GARY HANCOCK, | ) |
| | ) |
|        Plaintiff, | ) |
| v. | )    Civil Action No. 1:20-00483 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|        Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 22), filed on May 3, 2021. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States in moving to dismiss. (Document No. 24.) On July 22, 2021, Plaintiff filed his Response in Opposition. (Document No. 35.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 22) should be denied.

**PROCEDURAL HISTORY**

On June 16, 2020, Plaintiff, acting *pro se* and incarcerated at FCI McDowell, filed his Complaint pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*[1]

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less

(Document No. 1.) In his Complaint, Plaintiff complains of medical negligence and malpractice by prison medical personnel at FCI McDowell. (Id., p. 1.) Plaintiff alleges that in January 2018, Plaintiff complained to medical staff of complications with his seizure disorder and depression. (Id., p. 2.) Plaintiff acknowledges that medications were ordered for Plaintiff on January 25, 2018. (Id.) Specifically, Levetiracetam for seizures and Sertraline for depression. (Id.) Plaintiff alleges that he was given the incorrect medication from January 30, 2018, until February 5, 2018. (Id., p. 3.) Plaintiff further alleges that he believes he was given the incorrect medication on two occasions on January 30, 2018, and on one occasion on January 31, 2018. (Id.) Plaintiff explains he believes it was the incorrect medication because the "pill was bright orange in color" and it is "normally cream-colored." (Id.) Plaintiff explains that he questioned the color of the medication, but Mr. Walters assured Plaintiff that the medication was correct and that colors can vary. (Id.) Plaintiff claims that after he ingested the first pill, he began to "experience adverse symptoms/side-effects that gradually worsened after each does to include: light-headedness/faint, stomach pain, headaches, diarrhea, jaundiced/yellowed skin, pale stools, itching over entire body (no rash), and heart palpitations." (Id.) Plaintiff acknowledges that he "was having heart palpitations before ingesting the wrong medication, but the improper meds intensified these severely." (Id.) Plaintiff complains that his medical records note Plaintiff's complaint of being jaundiced/discolored, but "medical staff conveniently failed to note all of Plaintiff's complaints of being given wrong meds." (Id., p. 4.) Plaintiff further notes that the nurse noted that "Inmate does not appear jaundice" but

---

stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Plaintiff states that the "nurse does not know Plaintiff or see him on a daily basis to accurately notice a change in his skin complexation." (Id.) Plaintiff alleges that he is "a light-skinned black male, a complexion frequently referred to as yellow." (Id.) Plaintiff claims that he "noticed a change in his own skin complexion that the nurse was unable to detect, or refused to document in an attempt to cover-up Plaintiff being given the wrong medication." (Id.) Plaintiff acknowledges that he refused "the wrong medication on the evening of January 31, 2018." (Id.) Plaintiff, however, states that he "took several more doses even after adverse side-effects for one primary reason: the medication was having an amazing laxative effect and Plaintiff's medical records show that he has a history of chronic constipation." (Id.) Plaintiff alleges that his medical records have been falsified to show that Plaintiff refused all seizure meds from January 31, 2018, until February 5, 2018. (Id.) Plaintiff alleges that on February 5, 2018, Nurse Mr. Alexander informed Plaintiff they had been incorrectly giving Plaintiff an antibiotic named Levequin or LevoFlocin instead of his seizure medication for Levetiracetam. (Id.) Plaintiff further alleges that "the Health Services Administrator talked to Plaintiff at his cell door and acknowledged that she was aware that he had been given wrong meds." (Id.) Plaintiff claims that "Nurse Mr. Walters told Plaintiff that the medication mishap was the fault of the pharmacist who filled the prescription." (Id., p. 5.) Plaintiff contends that "after the wrong meds were discovered, Plaintiff refused all meds because he was in fear for his life and scarred from ingesting the wrong medication." (Id.) Plaintiff contends that he suffered "physical, mental/emotional injuries from ingesting the incorrect medication for several days" and "chronic abdominal/back pain problem that has magically appeared since the ingestion of Levequin (which is believed to be an antibiotic for gastro-intestinal infections). (Id., p. 8.) As relief, Plaintiff requests "$995,000 or the amount the court or jury deems appropriate to

3

compensate Plaintiff." (Id.)

By Order entered on January 11, 2021, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed Plaintiff to pay $190.00 as an initial partial payment of the filing fee. (Document No. 13.) The undersigned directed the Clerk to issue process promptly upon receipt of Plaintiff's initial partial payment of the filing fee. (Id.) Following the granting of an extension of time, Plaintiff paid the initial partial payment of the filing fee on March 1, 2021. (Document No. 16.) The Clerk's Office issued process on March 2, 2021. (Document No. 17.) On May 3, 2021, the United States filed its "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum of Law in Support. (Document Nos. 22 and 23.) The United States argues that Plaintiff's FTCA claim should be dismissed based on the following: (1) "Plaintiff's negligence claim against the United State must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act (Document No. 23, pp. 5 – 10.); and (2) "Plaintiff's damages are limited to the amount requested in his Tort Claim" (Id., p. 10 – 11.). As Exhibits, the United States attach the following: (1) The Declaration of Destiny Spearen (Document No. 22-1, pp. 2 – 3.) (2) A copy of Plaintiff's "Inmate History - Adm-Rel" (Id., pp. 5 - 6.); (3) A copy of Plaintiff's pertinent medical record (Id., pp. 11 - 135.); (4) A copy of Plaintiff's Administrative Tort Claim - "Claim for Damage, Injury or Death" (Id., pp. 9 – 13.); (4) The Declaration of Kevin Thompson (Document No. 22-2.); (5) The Declaration of Kelly Moore (Document No. 22-3.); and (6) A copy of Plaintiff's relevant medical records (Document No. 32.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 4, 2021, advising him of the right to file a response to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 24.) On June

29, 2021, Plaintiff filed his "Motion for Leave to Amend Complaint." (Document No. 29.) As an Exhibit, Plaintiff attached a copy of his Proposed Amended Complaint. (Document No. 29-1.) Following the granting of two extensions of time, Plaintiff filed his Response in Opposition to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" on July 22, 2021. (Document No. 35.) As Exhibits, Plaintiff attaches the following: (1) A copy of the BOP's denial letter from Tort Claim No. TRT-MXR-2019-07192 (Document No. 35-1, p. 2.); and (2) A copy of Plaintiff's Affidavit (Id., p. 4.).

## THE STANDARD

### Motion to Dismiss

A Rule 12(b)(6) motion requests dismissal for failure to state a claim upon which relief can be granted and tests the legal sufficiency of the complaint or pleading. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may

not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

### DISCUSSION

1. **Failure to satisfy the requirements of the MPLA.**

In its Motion, the United States argues that Plaintiff's negligence claim against the United

6

States must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act ("MPLA"). (Document No. 22 and Document No. 23, pp. 5 – 10.) As the United States explains, an inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. In the present case, Plaintiff alleges that the negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. The United States, therefore, argues that under West Virginia law, Plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. (Document No. 23, pp. 6 – 10.) Specifically, Plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. (Id.); W. Va. Code § 55-7B-6.[2] The United

---

[2] West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

States contends that Plaintiff has failed to comply with the foregoing. (Id., pp. 9 – 10.) The United States further argues that Plaintiff's cause of action is not based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care pursuant to West Virginia Code § 55-7B-6(c). (Id., pp. 7 - 8.) Finally, the United States asserts that even assuming Plaintiff believed West Virginia Code § 55-7B-6(c) applied and no screening certificate of merit was necessary, Plaintiff failed to file a statement in lieu of a screening certificate of merit pursuant to West Virginia Code § 55-7B-7(c). (Id., p. 9.) Therefore, the United States argues that Plaintiff's FTCA claim must be dismissed for failure to state a claim because Plaintiff failed to comply with the pre-suit requirements of the MPLA. (Id., p. 10.)

In Response, Plaintiff first argues that he is "unable to find and research the requirements of the MPLA while in Federal prison as Federal prisoners do not have access to research state law." (Document No. 35, p. 5.) Second, Plaintiff attaches a "Certificate of Merit" stating that "his

---

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

claims in this civil action are based upon a well-established legal theory of liability and expert testimony is not required to show a breach of the standard of care." (Id., pp. 6 - 7.) Plaintiff explains that his allegations are based on medical staff's negligence in providing incorrect medication and "it is well established that providing a patient with the wrong medication breaches the standard of care." (Id., pp. 7 - 8.) Plaintiff further claims that "it is within the lay person's knowledge that it falls below the standard of care for a nurse to issue the wrong meds to a patient." (Id., p. 8.) Plaintiff argues that "whether or not the wrong meds caused adverse symptoms is an issue for trial, where medical experts can present evidence to the jury." (Id., p. 9.) Finally, Plaintiff argues that his "statements on the administrative tort claim (SF-95) were sufficient to the meet the requirements of W. Va. Code § 55-7B-6(c)." (Id.)

Importantly, after the filing of United States' Motion, the Fourth Circuit issued its decision in Pledger v. Lynch, 5 F.4th 511 (4th Cir. 2021). In Pledger, the Fourth Circuit determined that a prisoner's FTCA claim was not subject to West Virginia's pre-suit notice and certification requirement for medical negligence cases. Id. The Fourth Circuit reasoned that that West Virginia's pre-suit requirements do no govern actions in federal court because such conflict with the Federal Rules of Civil Procedure. Id. at 519-21. The Fourth Circuit applied the two-step framework established in Shady Grove Orthopedic Assocs., P.A. v. Allstate, Inc., 559 U.S. 393, 398, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010), to "mediat[e] any potential conflict' between West Virginia's pre-suit requirements and the Federal Rules of Civil Procedure. Id. at 518-19. Under step one, the Fourth Circuit considered whether the Federal Rules answered the question in dispute. Id. at 519. After considering Rules 8, 9, and 11 of the Federal Rules of Civil Procedure, the Fourth Circuit determined that the question of whether a plaintiff must obtain an expert certificate of merit before filing a medical malpractice suit is answered in the negative by the Federal Rules. Id. at

519-20. The Fourth Circuit stated that "it is 'impossible to reconcile' certificate requirements like West Virginia's with the 'requirements of the Federal Rules of Civil Procedure." Id. at 520. The Fourth Circuit reasoned that West Virginia's pre-suit requirements could not apply to Plaintiff's federal action under step one of the Shady Grove framework because such required "something extra" to be plead by Plaintiff that is not required under the Federal Rules of Civil Procedure. Id. Under the second step of the Shady Gove framework, the Fourth Circuit considered whether the MPLA nevertheless governs because the relevant Federal Rules were outside Congress's constitutional rulemaking power or the statutory authorization provided by the Rules Enabling Act. Id. at 520-21. The Fourth Circuit easily dispensed with this step concluding that the "[t]he Federal Rules of Civil Procedure enjoy presumptive validity under both the constitutional and statutory constraints" and "the Supreme Court has '[s]o far . . . rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." Id. at 521(citations omitted). Therefore, the Fourth Circuit explained that the Federal Rules of Civil Procedure, and not the MPLA, governs Plaintiff's claim in federal court. Id. The Fourth Circuit further rejected the argument that "the choice-of-law framework set out in Erie [R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)]" should apply and "the MPLA should govern because it is 'substantive.'" Id. at 521. Finally, the Fourth Circuit found that the MPLA is clearly procedural because "West Virginia's certificate requirement appears in a statutory section governing 'prerequisites' and 'procedures' for filing suit, not the section outlining the elements of proof for a claim. Id. at 523.

    In view of Pledger, the undersigned finds that Plaintiff's failure to comply with the West Virginia MPLA's pre-suit requirements do not warrant dismissal of the above action. Accordingly, the undersigned respectfully recommends that the District Court deny the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 22) requesting

dismissal based upon Plaintiff's failure to comply with the pre-suit requirements of the West Virginia MPLA.

2. **Damages Limited to the Amount Requested in the Administrative Tort Claim.**

Finally, the United States argues that Plaintiff is prohibited from instituting an action in this Court seeking an amount in excess of the amount presented in Plaintiff's Administrative Tort claim filed with the BOP. (Document No. 22 and Document No. 23, pp. 10 – 11.) Specifically, the United States complains that Plaintiff' above action seeks damages in the amount of $995,000.00. (Id.) The United States notes that Plaintiff's Administrative Tort claim filed with the BOP requested damages in the amount of $250,000.00. (Id.) Therefore, the United States argues that Plaintiff is prohibited from instituting an action in excess of that amount ($250,000.00). (Id.)

In Response, Plaintiff notes that his original Complaint requested "$995,000 or the amount the Court or jury deems appropriate to compensate Plaintiff's extensive suffering, more or less." (Document No. 35, p. 10.) Plaintiff, therefore, argues that "the amount requested is whatever amount the court deems appropriate, including the lesser amount stated on the administrative claim." (Id.) Additionally, Plaintiff has filed a Motion for Leave to Amend Complaint." (Document No. 29). As an Exhibit, Plaintiff attaches a copy of his Proposed Amended Complaint. (Document No. 29-1.) The undersigned notes that Plaintiff's Proposed Amended Complaint requests damages amounting to $250,000.00. (Id.)

Title 28 U.S.C. § 2675(b) provides that a plaintiff's FTCA action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except, where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation of intervening facts, relating to the amount of the claim." By separate Order entered this day, the undersigned has granted

Plaintiff's "Motion for Leave to Amend Complaint" (Document No. 29). As stated above, Plaintiff has amended the damages request in his Complaint to not exceed the amount sought in his Administrative Tort claim. Accordingly, the undersigned respectfully recommends that the District Court deny the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 22) based on Plaintiff's requested damage amount.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court District Court **DENY** the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 22), and **REFER** this matter back to the undersigned for further proceedings.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge

Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 7, 2022.

Omar J. Aboulhosn
United States Magistrate Judge