IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| GARY HANCOCK, | ) |
| | ) |
|       Plaintiff, | ) |
| v. | )    Civil Action No. 1:20-00483 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|       Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Document No. 57), filed on May 31, 2022. On June 14, 2022, the United States filed its Response in Opposition. (Document No. 62.) On July 1, 2022, Plaintiff filed his Reply. (Document No. 68.) Having examined the record and considered the applicable law, the undersigned has concluded that Plaintiff's Motion for Partial Summary Judgment (Document No. 57) should be granted.

**PROCEDURAL HISTORY**

On June 16, 2020, Plaintiff, acting *pro se* and incarcerated at FCI McDowell, filed his Complaint pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*[1] (Document No. 1.) In his Complaint, Plaintiff complains of medical negligence and malpractice by prison medical personnel at FCI McDowell. (Id., p. 1.) Plaintiff alleges that in January 2018, Plaintiff complained to medical staff of complications with his seizure disorder and depression.

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Id., p. 2.) Plaintiff acknowledges that medications were ordered for Plaintiff on January 25, 2018. (Id.) Specifically, Levetiracetam for seizures and Sertraline for depression. (Id.) Plaintiff alleges that he was given the incorrect medication from January 30, 2018, until February 5, 2018. (Id., p. 3.) Plaintiff further alleges that he believes he was given the incorrect medication on two occasions on January 30, 2018, and on one occasion on January 31, 2018. (Id.) Plaintiff explains he believes it was the incorrect medication because the "pill was bright orange in color" and it is "normally cream-colored." (Id.) Plaintiff explains that he questioned the color of the medication, but Mr. Walters assured Plaintiff that the medication was correct and that colors can vary. (Id.) Plaintiff claims that after he ingested the first pill, he began to "experience adverse symptoms/side-effects that gradually worsened after each does to include: light-headedness/faint, stomach pain, headaches, diarrhea, jaundiced/yellowed skin, pale stools, itching over entire body (no rash), and heart palpitations." (Id.) Plaintiff acknowledges that he "was having heart palpitations before ingesting the wrong medication, but the improper meds intensified these severely." (Id.) Plaintiff complains that his medical records note Plaintiff's complaint of being jaundiced/discolored, but "medical staff conveniently failed to note all of Plaintiff's complaints of being given wrong meds." (Id., p. 4.) Plaintiff further notes that the nurse noted that "Inmate does not appear jaundice" but Plaintiff states that the "nurse does not know Plaintiff or see him on a daily basis to accurately notice a change in his skin complexation." (Id.) Plaintiff alleges that he is "a light-skinned black male, a complexion frequently referred to as yellow." (Id.) Plaintiff claims that he "noticed a change in his own skin complexion that the nurse was unable to detect, or refused to document in an attempt to cover-up Plaintiff being given the wrong medication." (Id.) Plaintiff acknowledges that he refused "the wrong medication on the evening of January 31, 2018." (Id.) Plaintiff,

however, states that he "took several more doses even after adverse side-effects for one primary reason: the medication was having an amazing laxative effect and Plaintiff's medical records show that he has a history of chronic constipation." (Id.) Plaintiff alleges that his medical records have been falsified to show that Plaintiff refused all seizure meds from January 31, 2018, until February 5, 2018. (Id.) Plaintiff alleges that on February 5, 2018, Nurse Mr. Alexander informed Plaintiff they had been incorrectly giving Plaintiff an antibiotic named Levaquin or LevoFlocin instead of his seizure medication for Levetiracetam. (Id.) Plaintiff further alleges that "the Health Services Administrator talked to Plaintiff at his cell door and acknowledged that she was aware that he had been given wrong meds." (Id.) Plaintiff claims that "Nurse Mr. Walters told Plaintiff that the medication mishap was the fault of the pharmacist who filled the prescription." (Id., p. 5.) Plaintiff contends that "after the wrong meds were discovered, Plaintiff refused all meds because he was in fear for his life and scarred from ingesting the wrong medication." (Id.) Plaintiff contends that he suffered "physical, mental/emotional injuries from ingesting the incorrect medication for several days" and "chronic abdominal/back pain problem that has magically appeared since the ingestion of Levaquin (which is believed to be an antibiotic for gastro-intestinal infections). (Id., p. 8.) As relief, Plaintiff requests "$995,000 or the amount the court or jury deems appropriate to compensate Plaintiff." (Id.)

By Order entered on January 11, 2021, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed Plaintiff to pay $190.00 as an initial partial payment of the filing fee. (Document No. 13.) The undersigned directed the Clerk to issue process promptly upon receipt of Plaintiff's initial partial payment of the filing fee. (Id.) Following the granting of an extension of time, Plaintiff paid the initial partial payment of the filing fee on March

1, 2021. (Document No. 16.) The Clerk's Office issued process on March 2, 2021. (Document No. 17.) On May 3, 2021, the United States filed its "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum of Law in Support. (Document Nos. 22 and 23.) The United States argued that Plaintiff's FTCA claim should be dismissed based on the following: (1) "Plaintiff's negligence claim against the United State must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act (Document No. 23, pp. 5 – 10.); and (2) "Plaintiff's damages are limited to the amount requested in his Tort Claim" (Id., p. 10 – 11.). As Exhibits, the United States attached the following: (1) The Declaration of Destiny Spearen (Document No. 22-1, pp. 2 – 3.) (2) A copy of Plaintiff's "Inmate History - Adm-Rel" (Id., pp. 5 - 6.); (3) A copy of Plaintiff's pertinent medical record (Id., pp. 11 – 135 and Document No. 32.); (4) A copy of Plaintiff's Administrative Tort Claim - "Claim for Damage, Injury or Death" (Document No. 22-1, pp. 9 – 13.); (4) The Declaration of Kevin Thompson (Document No. 22-2.); and (5) The Declaration of Kelly Moore (Document No. 22-3.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 4, 2021, advising him of the right to file a response to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 24.) On June 29, 2021, Plaintiff filed his "Motion for Leave to Amend Complaint." (Document No. 29.) As an Exhibit, Plaintiff attached a copy of his Proposed Amended Complaint. (Document No. 29-1.) Following the granting of two extensions of time, Plaintiff filed his Response in Opposition to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" on July 22, 2021. (Document No. 35.) As Exhibits, Plaintiff attached the following: (1) A copy of the BOP's denial letter from Tort Claim No. TRT-MXR-2019-07192 (Document No. 35-1, p. 2.); and

(2) A copy of Plaintiff's Affidavit (Id., p. 4.).

By Order entered on January 7, 2022, the undersigned granted Plaintiff's Motion for Leave to Amend Complaint and directed the Clerk to re-docked Plaintiff's Proposed Amended Complaint as his Amended Complaint. (Document No. 36.) In his Amended Complaint, Plaintiff amends his request for damages to not exceed the amount sought in his Administrative Tort claim.[2] (Document No. 37.) By Proposed Findings and Recommendations ("PF&R") also entered on January 7, 2022, the undersigned recommended that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be denied and the matter be referred back to the undersigned for further proceedings. (Document No. 38.) By Memorandum Opinion and Order entered on January 31, 2022, United States District Judge David A. Faber adopted the undersigned's PF&R, denied the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," and referred the matter back to the undersigned for further proceedings. (Document No. 41.) On February 18, 2022, the United States filed its Answer to Plaintiff's Amended Complaint. (Document No. 45.) The undersigned entered a Scheduling Order on February 22, 2022. (Document No. 48.)

On May 31, 2022, Plaintiff filed his Motion for Partial Summary Judgment, Declaration, and Brief in Support. (Document Nos. 57 - 59.) Specifically, Plaintiff requests that the Court grant him summary judgment "on his claim of medical negligence and malpractice based on the FBOP pharmacist filling his prescription with the wrong medication." (Document Nos. 57 and 59.) On June 14, 2022, the United States filed its Response. (Document No. 62.) On July 1, 2022, Plaintiff

---

[2] In its "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," the United States argued, in part, that the above action should be dismissed because Plaintiff's Complaint sought damages in excess of the amount requested in his Administrative Tort claim. (Document Nos. 22 and 23.)

filed his Reply. (Document No. 68.)

## UNDISPUTED FACTS

Plaintiff was prescribed Levetiracetam for seizures. (Document No. 62, p. 1.) Plaintiff, however, mistakenly received the antibiotic Levaquin on five occasions over the course of seven days instead of his prescribed Levetiracetam. (Id., pp. 1 – 2.) Plaintiff's medical records reveal that Plaintiff was given Levaquin as follows: (1) One dose on the morning and evening of January 30, 2018; (2) One dose on the morning of January 31, 2018; (3) One dose on the evening of February 4, 2018; and (5) One dose on the morning of February 5, 2018. (Id.) On February 5, 2018, medical staff discovered that the medication in the bottle identified as Levetiracetam was actually the antibiotic Levaquin. (Id., p. 2.) The United States does not dispute that the pharmacist that filled the medication was an employee of the FBOP. The United States further concedes "negligence in that the pharmacist mistakenly filled the prescription with the wrong medication that was subsequently given to the Plaintiff." (Id., pp. 3, 5 – 6.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 *4th Cir. 2020)("A genuine question of material fact exists where, after reviewing

the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the

summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at the summary judgment stage. Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. See Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## **DISCUSSION**

In his Motion for Partial Summary Judgment and Brief in Support, Plaintiff requests that the Court grant him summary judgment "on his claim of medical negligence and malpractice based on the FBOP pharmacist filling his prescription with the wrong medication." (Document Nos. 57 and 59.) Plaintiff states that he was prescribed Levetiracetam (an anti-seizure medication), but he was mistakenly given Levaquin (an antibiotic). (Document No. 59.) Plaintiff claims that he received "5 doses of the incorrect medication" and "the defendant has conceded to the fact that the mistake was made by the pharmacist that filled the prescription." (Id.) Therefore, Plaintiff first argues that "[t]he conduct of the pharmacist in filling Plaintiff's prescription with the wrong

8

medication constituted pharmaceutical/medical negligence and malpractice." (Id., pp. 2 – 8.) Citing Nichols v. Kaiser Found Health Plan of Mid-Atlantic States, Inc., 257 Va. 491, 514 S.E.2d 608, 609 (Va. 1999) and Gregory v. Wal-Mart Stores East, 2013 U.S. Dist. LEXIS 202034 (S.D.Ga. 2013), Plaintiff argues that "[t]he law is clearly established 'that dispensing wrong medication is a breach of a pharmacist's standard of care' and that expert testimony is unnecessary because a jury could understand this without the aid of such testimony." (Id.) Thus, Plaintiff contends that "the pharmacist in this case has breached the standard of care under West Virginia law, and any other State law, as dispensing the wrong medication violates a pharmacist's standard of care in all jurisdictions." (Id.) Plaintiff argues he is entitled to partial summary judgment "establishing breach of duty/standard of care on the part of the pharmacist which constituted medical negligence and malpractice, leaving for dispute the issues of causation and damages." (Id.) Second, Plaintiff argues that the United States is liable for the negligence of the FBOP pharmacist. (Id., pp. 8 – 9.) Plaintiff contends it is undisputed that the pharmacist and/or pharmacy tech was an employee of the FBOP at the time Plaintiff was provided the wrong medication. (Id.) Plaintiff, therefore, contends that the United States is liable under the FTCA for negligence on the part of FBOP pharmacy staff. (Id.)

In his Declaration, Plaintiff states that "[b]etween the dates of 1/30/2018 and 2/5/2018, I was given 5 doses of the incorrection medication." (Document No. 58.) Plaintiff states he was "prescribed Levetiracetam, but due to an error by medical staff, I was mistakenly given the antibiotic Levaquin in its place." (Id.) Plaintiff further states that he "experienced several severe and ongoing side effects from taking the wrong medication as described in the Complaint at paragraph 7." (Id.) Plaintiff asserts that his "medical records show that [he] developed severe, chronic abdominal pain shortly after being exposed to Levaquin." (Id.)

9

As Exhibits, Plaintiff attaches the following: (1) A copy of an e-mail dated April 27, 2021, from Kelly Lucas to Steven Luckie stating as follows: "The nurse discovered today that the wrong medication was sent for the above inmate. His bottle said levetiracetam 500mg but the actual pills are levofloxacin 500mg. I do think he actually received a couple of doses until the nurse caught it" (Document No. 58-1.); (2) A copy of the United States' "Answers to Plaintiff's Interrogatories and Request for Production of Documents" (Document No. 59-1, pp. 2 – 4.); and (3) A copy of the Federal Bureau of Prisons' "Position Description Cover Sheet" concerning a Pharmacy Technician and Pharmacist (Id., pp. 6 – 9.)

In Response, the United States argues that Plaintiff's Motion for Partial Summary Judgment should be denied. (Document No. 62.) The United States acknowledges that "[t]he plaintiff did receive the wrong medication, but the United States denies that it is liable to Plaintiff" because Plaintiff "has not offered the requisite expert opinion necessary to establish causation and damages." (Id.) Even assuming the pharmacist's error in filling the prescription was a breach of the standard of care that does not require expert testimony, the United States argues that Plaintiff must still prove causation and damages. (Id.) The United States contends that "[t]o establish proximate causation in a medical negligence case, a plaintiff must prove such causal link through expert witness testimony." (Id.) The United States asserts that a case must be dismissed where there is a "failure to prove the causal link by expert witness testimony between the alleged negligence and the alleged injury." (Id.) The United States contends that Levaquin "is a safe and effective antibiotic" and "[e]xpert testimony is necessary, for example, to explain the chemical compound, dosage, absorption, plasma concentration, therapeutic window, half-life, and common adverse effects of Levaquin." (Id.) The United States further argues that "expert testimony is required to establish whether the relatively small amount ingested by plaintiff over the course of a

week was sufficient to cause the damages which he claims." (Id.) The United States notes that the foregoing is not the type of information commonly known by a law person thereby falling under the narrow exception that would relieve a plaintiff of the requirements of expert testimony. (Id.) The United States further notes that Plaintiff has not presented any expert testimony as to the foregoing. (Id.) Finally, the United States argues that even though it concedes "that plaintiff received the wrong medication, the United States does not acquiesce to plaintiff's argument that any time a pharmacist makes a mistake in filling a prescription, it represents a breach of the standard of care and does not require expert testimony." (Id.) The United States contends that Plaintiff's argument supporting such a finding is premised on cases arising outside West Virginia. (Id.) Thus, the United States "objects to the court's adoption of plaintiff's argument and reserves the right to brief the issue under West Virginia law." (Id.) The United States, however, states that the issue is moot because "Defendant has conceded negligence in that the pharmacist mistakenly filled the prescription with the wrong medication that was subsequently given to the plaintiff." (Id.) The United States concludes that Plaintiff's motion for summary judgment must be denied because Plaintiff must present expert testimony of the elements of causation and damages. (Id.) As an Exhibit, the United States attaches a copy of Plaintiff's "Claim for Damage, Injury, or Death." (Document No. 62-1.)

In Reply, Plaintiff first notes that he disagrees with some of the "Pertinent Facts" contained in the United States' Response. (Document No. 68.) Specifically, Plaintiff disputes the United States' representation that "Plaintiff did not complain of any adverse effects of the medication at the time he received the medication, nor did he complain in the days immediately following ingestion of the medication." (Id.) Plaintiff argues that he "complained to Nurse Walters that the medication was making [him] ill and told him that [he] believed it to be the wrong medication" on

January 31, 2018. (Id.) Plaintiff states that Nurse Walters "assured [him] that it was the right medication and that [Plaintiff] may have to 'get used to' the medication." (Id.) Plaintiff states that he refused the medication on January 31, 2018, and complained daily to medical staff about his ongoing symptoms. (Id.) Plaintiff states that he submitted a written sick call request on February 6, 2018, and he was not seen until February 14, 2018. (Id.) Plaintiff further disputes the United States' claim that Levaquin is a "safe antibiotic." (Id.) Plaintiff contends that drug facts for Levaquin state that it can cause "serious or disabling side effects" and "should be used only for infections that cannot be treated with a safer antibiotic." (Id.)

Second, Plaintiff argues that he is entitled to summary judgment concerning "the fact that the pharmacist breached the standard of care under applicable law." (Id.) Plaintiff argues "[t]here is no genuine issue of material fact concerning negligence on the part of the pharmacist that filled plaintiff's prescription with the wrong medication." (Id.) Plaintiff further notes that he "only asked that the Court rule that the pharmacist's actions breached the standard of care and amounted to negligence, leaving causation and damages to be determined later." (Id.) Plaintiff states that when he "stated that the defendant was 'liable,' he meant only that the pharmacist's actions amounted to a breach of the standard of care and negligence." (Id.) Therefore, Plaintiff argues that he is entitled to partial summary judgment concerning the fact that the pharmacist was negligent and breached the standard of care. (Id.) As an Exhibit, Plaintiff attached his Declaration in Support. (Document No. 68-1.)

The above action involves a medical negligence claim brought pursuant to the FTCA. An individual "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805

(1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. In the present case, Plaintiff alleges that the negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies and this Court must apply the West Virginia Medical Professional Liability Act ("WVMPLA") concerning Plaintiff's medical negligence claim. See Dreenen v. United States, 2010 WL 1650032, * 2 (4th Cir. 2010)("In West Virginia, the Medical Professional Liability Act controls medical malpractice claims.") West Virginia Code § 55-7B-3(a) provides as follows:

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
>
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3. Generally, proof of medical negligence requires expert testimony. Bellomy v. United States, 888 F.Supp. 760, 763-64 (S.D.W.Va. 1995); also see Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964)("It is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses."). Specifically, expert testimony is required when a medical negligence claim involves

a determination of whether a plaintiff was properly diagnosed or treated, or whether the health care provider was the proximate cause of the plaintiff's injuries. Banfi v. American Hospital for Rehabilitation, 207 W.Va. 135, 140, 529 S.E.2d 600, 605-06 (2000); also see Nottingham v. United States, 2017 WL 3026926, * 7 (S.D.W.Va. July 17, 2017)(J. Johnston)(dismissing case where plaintiff failed to provide expert testimony establishing a breach in the standard of care and that the alleged breach was the proximate cause of plaintiff's alleged injury); Wallace v. Community Radiology, 2016 WL 1563041, * 8 (S.D.W.Va. April 18, 2016)(J. Faber)(finding plaintiff failed to meet her burden to establish proximate causation where there was no expert testimony supporting such and it was not the type of case where proximate causation was "reasonably direct or obvious"); Dellinger v. Pediatrix Medical Group, P.C., 232 W. Va. 115, 124-25, 750 S.Ed.2d 668, 677-78 (2013)(concluding that the lack of expert medical testimony as to causation was fatal to a medical negligence claim); Totten v. Adongy, 175 W.Va. 634, 640, 337 S.E.2d 2, 8 (1985)(distinguishing cases were expert testimony was unnecessary because causation was "reasonably direct or obvious"). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006).

      A thorough review of Plaintiff's Motion for Partial Summary Judgment, Brief in Support, and Reply reveals that Plaintiff is requesting summary judgment on the sole issue of whether the pharmacist employed by the BOP violated the applicable standard of care by providing Plaintiff with the incorrect medication. (Document Nos. 57, 59, and 68.) Although the United States disputes that summary judgment is appropriate, the United States concedes "negligence in that the pharmacist mistakenly filled the prescription with the wrong medication that was subsequently

14

given to the Plaintiff." (Document No. 62, p. 6.) The United States' arguments in opposition of summary judgment focus upon the United States' claim that it is not "liable" to Plaintiff because Plaintiff must present expert testimony of the elements of causation and damages. (Document No. 62, pp. 3 – 7.) Even though Plaintiff requests that he be granted summary judgment as the United States' "liability," Plaintiff does *not* request summary judgment on the issues of causation and damages. (See Document No. 59, p. 7)("The Court is this case should grant partial summary judgment to Plaintiff Hancock establishing breach of duty/standard of care on the part of the pharmacist which constituted medical negligence and malpractice, leaving for dispute the issues of causation and damages.") In his Reply, Plaintiff acknowledges his erroneous use of the term "liability" and again clarifies that he is *not* requesting summary judgment on the issues of causation and damages.[3] (Document No. 68, p. 5)("Plaintiff may have used the term 'liable' in his Motion but did not intend for this to include causation and damages. When Plaintiff stated that the defendant was 'liable,' he meant only that the pharmacists' actions amounted to a breach of the standard of care and negligence.") Accordingly, the undersigned considers Plaintiff's request for summary judgment on the sole issue of whether the pharmacist employed by the BOP violated the applicable standard of care by providing Plaintiff with the incorrect medication. Clearly, the pharmacist owed Plaintiff a duty of care to act as a "prudent health care provider [would] in the profession or class to which [she] belongs acting in the same or similar circumstances." See W. Va. Code § 55-7B-3(a). Plaintiff must show that there is no genuine issue of material fact regarding

---

[3] The record further supports a finding that the parties currently disagree, and there are genuine issues of material fact, concerning whether Plaintiff suffered an injury as a result of being given the incorrect medication and whether the defendant's negligence was the proximate cause of Plaintiff's alleged injury. Furthermore, the undersigned finds that even assuming Plaintiff suffered the alleged injuries, causation is not "reasonably direct or obvious" as to obviate the need for expert testimony.

whether the pharmacist breached the applicable standard of care owed to Plaintiff. Viewing the facts in the light most favorable to the United States, there is no genuine issue of material facts as to whether the pharmacist was negligent in providing the incorrect medication. The United States acknowledges that a pharmacist employed by the FBOP incorrectly filled Plaintiff's prescription and Plaintiff was administered the incorrect medication on five occasions during a seven day period. (See Document No. 62, pp. 1 – 2.) The United States concedes this constitutes negligence. (See Id., p. 6)(Acknowledging that the issue of whether the pharmacist breached the standard of care was moot because "Defendant has conceded negligence in that the pharmacist mistakenly filled the prescription with the wrong medication that was subsequently given to the plaintiff.") Thus, there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law on the issue of the breach of standard of care. Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Partial Summary Judgment be granted on the issue that the FBOP's pharmacist committed negligence in violation of the applicable standard of care. See Adkins v. United States, 2014 WL 3853453 (S.D.W.Va. Aug. 2014)(granting motion for partial summary judgment as to the issue of whether defendant's deemed employees violated the applicable standard of care).

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court District Court **GRANT** Plaintiff's Motion for Partial Summary Judgment (Document No. 57), and **REFER** this matter back to the undersigned for further proceedings. Specifically, the undersigned recommends the granting of summary judgment in favor of Plaintiff on the sole issue that the FBOP's pharmacist committed negligence in violation of the applicable standard of care

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 7, 2022.

Omar J. Aboulhosn
United States Magistrate Judge