IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| GARY HANCOCK, | ) |
| | ) |
|        Plaintiff, | ) |
| v. | )    Civil Action No. 1:20-00483 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|        Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 89), filed on April 13, 2023. On May 12, 2023, Plaintiff filed his Response in Opposition. (Document No. 92.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 89) should be granted.

**PROCEDURAL HISTORY**

On June 16, 2020, Plaintiff, acting *pro se* and incarcerated at FCI McDowell, filed his Complaint pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*[1] (Document No. 1.) In his Complaint, Plaintiff complains of medical negligence and malpractice by prison medical personnel at FCI McDowell. (Id., p. 1.) Plaintiff alleges that in January 2018,

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Plaintiff notified medical staff of complications with his seizure disorder and depression. (Id., p. 2.) Plaintiff acknowledges that medications were ordered for Plaintiff on January 25, 2018. (Id.) Specifically, Levetiracetam for seizures and Sertraline for depression. (Id.) Plaintiff alleges that he was given the incorrect medication from January 30, 2018, until February 5, 2018. (Id., p. 3.) Plaintiff further alleges that he believes he was given the incorrect medication on two occasions on January 30, 2018, and on one occasion on January 31, 2018. (Id.) Plaintiff explains he believes it was the incorrect medication because the "pill was bright orange in color" and it is "normally cream-colored." (Id.) Plaintiff explains that he questioned the color of the medication, but Mr. Walters assured Plaintiff that the medication was correct and that colors can vary. (Id.) Plaintiff claims that after he ingested the first pill, he began to "experience adverse symptoms/side-effects that gradually worsened after each dose to include: light-headedness/faint, stomach pain, headaches, diarrhea, jaundiced/yellowed skin, pale stools, itching over entire body (no rash), and heart palpitations." (Id.) Plaintiff acknowledges that he "was having heart palpitations before ingesting the wrong medication, but the improper meds intensified these severely." (Id.) Plaintiff complains that his medical records note Plaintiff's complaint of being jaundiced/discolored, but "medical staff conveniently failed to note all of Plaintiff's complaints of being given wrong meds." (Id., p. 4.) Plaintiff further asserts that the nurse noted that "Inmate does not appear jaundice" but Plaintiff states that the "nurse does not know Plaintiff or see him on a daily basis to accurately notice a change in his skin complexation." (Id.) Plaintiff alleges that he is "a light-skinned black male, a complexion frequently referred to as yellow." (Id.) Plaintiff claims that he "noticed a change in his own skin complexion that the nurse was unable to detect, or refused to document in an attempt to cover-up Plaintiff being given the wrong medication." (Id.) Plaintiff acknowledges

that he refused "the wrong medication on the evening of January 31, 2018." (Id.) Plaintiff, however, states that he "took several more doses even after adverse side-effects for one primary reason: the medication was having an amazing laxative effect and Plaintiff's medical records show that he has a history of chronic constipation." (Id.) Plaintiff alleges that his medical records have been falsified to show that Plaintiff refused all seizure meds from January 31, 2018, until February 5, 2018. (Id.) Plaintiff alleges that on February 5, 2018, Nurse Mr. Alexander informed Plaintiff that staff had been incorrectly giving Plaintiff an antibiotic named Levaquin or LevoFlocin instead of his seizure medication for Levetiracetam. (Id.) Plaintiff further alleges that "the Health Services Administrator talked to Plaintiff at his cell door and acknowledged that she was aware that he had been given wrong meds." (Id.) Plaintiff claims that "Nurse Mr. Walters told Plaintiff that the medication mishap was the fault of the pharmacist who filled the prescription." (Id., p. 5.) Plaintiff contends that "after the wrong meds were discovered, Plaintiff refused all meds because he was in fear for his life and scarred from ingesting the wrong medication." (Id.) Plaintiff contends that he suffered "physical, mental/emotional injuries from ingesting the incorrect medication for several days" and "chronic abdominal/back pain problem that has magically appeared since the ingestion of Levaquin (which is believed to be an antibiotic for gastro-intestinal infections). (Id., p. 8.) As relief, Plaintiff requests "$995,000 or the amount the court or jury deems appropriate to compensate Plaintiff." (Id.)

By Order entered on January 11, 2021, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed Plaintiff to pay $190.00 as an initial partial payment of the filing fee. (Document No. 13.) The undersigned directed the Clerk to issue process promptly upon receipt of Plaintiff's initial partial payment of the filing fee. (Id.) Following the

granting of an extension of time, Plaintiff paid the initial partial payment of the filing fee on March 1, 2021. (Document No. 16.) The Clerk's Office issued process on March 2, 2021. (Document No. 17.) On May 3, 2021, the United States filed its "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum of Law in Support. (Document Nos. 22 and 23.) The United States argued that Plaintiff's FTCA claim should be dismissed based on the following: (1) "Plaintiff's negligence claim against the United State must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act (Document No. 23, pp. 5 – 10.); and (2) "Plaintiff's damages are limited to the amount requested in his Tort Claim" (Id., p. 10 – 11.). As Exhibits, the United States attached the following: (1) The Declaration of Destiny Spearen (Document No. 22-1, pp. 2 – 3.) (2) A copy of Plaintiff's "Inmate History - Adm-Rel" (Id., pp. 5 - 6.); (3) A copy of Plaintiff's pertinent medical record (Id., pp. 11 – 135 and Document No. 32.); (4) A copy of Plaintiff's Administrative Tort Claim - "Claim for Damage, Injury or Death" (Document No. 22-1, pp. 9 – 13.); (4) The Declaration of Kevin Thompson (Document No. 22-2.); and (5) The Declaration of Kelly Moore (Document No. 22-3.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 4, 2021, advising him of the right to file a response to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 24.) On June 29, 2021, Plaintiff filed his "Motion for Leave to Amend Complaint." (Document No. 29.) As an Exhibit, Plaintiff attached a copy of his Proposed Amended Complaint. (Document No. 29-1.) Following the granting of two extensions of time, Plaintiff filed his Response in Opposition to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" on July 22, 2021. (Document No. 35.) As Exhibits, Plaintiff attached the following: (1) A copy of the

BOP's denial letter from Tort Claim No. TRT-MXR-2019-07192 (Document No. 35-1, p. 2.); and (2) A copy of Plaintiff's Affidavit (Id., p. 4.).

By Order entered on January 7, 2022, the undersigned granted Plaintiff's Motion for Leave to Amend Complaint and directed the Clerk to re-docked Plaintiff's Proposed Amended Complaint as his Amended Complaint. (Document No. 36.) In his Amended Complaint, Plaintiff amends his request for damages to not exceed the amount sought in his Administrative Tort claim.[2] (Document No. 37.) By Proposed Findings and Recommendations ("PF&R") also entered on January 7, 2022, the undersigned recommended that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be denied and the matter be referred back to the undersigned for further proceedings. (Document No. 38.) By Memorandum Opinion and Order entered on January 31, 2022, United States District Judge David A. Faber adopted the undersigned's PF&R, denied the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," and referred the matter back to the undersigned for further proceedings. (Document No. 41.) On February 18, 2022, the United States filed its Answer to Plaintiff's Amended Complaint. (Document No. 45.) The undersigned entered a Scheduling Order on February 22, 2022.[3] (Document No. 48.)

On May 31, 2022, Plaintiff filed his Motion for Partial Summary Judgment, Declaration, and Brief in Support. (Document Nos. 57 - 59.) Specifically, Plaintiff requests that the Court grant him summary judgment "on his claim of medical negligence and malpractice based on the FBOP

---

[2] In its "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," the United States argued, in part, that the above action should be dismissed because Plaintiff's Complaint sought damages in excess of the amount requested in his Administrative Tort claim. (Document Nos. 22 and 23.)

[3] The undersigned granted multiple Motions for Extensions of Time concerning the Scheduling Order. (Document Nos. 49, 50, 63, 72, 73, 75 – 77, 81 – 84, 86.)

pharmacist filling his prescription with the wrong medication." (Document Nos. 57 and 59.) On June 1, 2022, the United States filed a "Motion to Establish 26(a)(2) Expert Witness Disclosure Deadlines." (Document No. 60.) By Order entered on June 2, 2022, the undersigned granted the United States' Motion and entered revised deadlines for the completion of discovery, the disclosure of expert witnesses, and the filing of dispositive motions. (Document No. 61.) On June 14, 2022, the United States filed its Response to Plaintiff's Motion for Partial Summary Judgment. (Document No. 62.) On June 27, 2022, Plaintiff filed a "Motion for Appointment of Counsel and/or for Appointment of Expert Witnesses," Memorandum in Support, and Declaration. (Document No. 64.) On July 1, 2022, Plaintiff filed his Reply to the United States' Response to Plaintiff's Motion for Partial Summary Judgment. (Document No. 68.) By Order entered on July 8, 2022, the undersigned denied Plaintiff's "Motion for Appointment of Counsel and/or for Appointment of Expert Witnesses." (Document No. 71.) On July 21, 2022, Plaintiff filed Objections to the undersigned's Order denying his "Motion for Appointment of Counsel and/or for Appointment of Expert Witnesses." (Document No. 74.)

By PF&R entered on October 7, 2022, the undersigned recommended that the District Court grant Plaintiff's Motion for Partial Summary Judgment (Document No. 57), and refer the matter back to the undersigned for further proceedings. (Document No. 78.) Specifically, the undersigned recommended that Plaintiff be granted summary judgment on the sole issue that the FBOP's pharmacist committed negligence in violation of the applicable standard of care. (Id.) On October 28, 2022, Plaintiff filed his Objections to the undersigned's PF&R. (Document No. 80.) Specifically, Plaintiff objected to the undersigned's finding that causation was not "reasonably direct or obvious" as to obviate the need for expert testimony. (Id.) By Order entered on February 23, 2023, District Judge Faber overruled Plaintiff's Objections to the undersigned's Order denying

6

Plaintiff's "Motion for Appointment of Counsel and/or for Appointment of Expert Witnesses." (Document No. 85.) By Memorandum Opinion and Order entered on March 29, 2023, District Judge Faber overruled Plaintiff's objections and adopted the undersigned's recommendation that Plaintiff be granted partial summary judgment. (Document No. 87.)

On April 13, 2023, the United States filed its "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 89 and 90.) Specifically, the United States argues that Plaintiff's above action must be dismissed because Plaintiff is unable to establish proximate cause and damages as required by West Virginia law. (Id.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 14, 2023, advising him of the right to file a response to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 91.) On May 12, 2023, Plaintiff filed his Response in Opposition. (Document No. 92.)

**UNDISPUTED FACTS**

Plaintiff was prescribed Levetiracetam for seizures. (Document No. 62, p. 1.) Plaintiff, however, mistakenly received the antibiotic Levaquin on five occasions over the course of seven days instead of his prescribed Levetiracetam. (Id., pp. 1 – 2.) Plaintiff's medical records reveal that Plaintiff was given Levaquin as follows: (1) One dose on the morning and evening of January 30, 2018; (2) One dose on the morning of January 31, 2018; (3) One dose on the evening of February 4, 2018; and (5) One dose on the morning of February 5, 2018. (Id.) On February 5, 2018, medical staff discovered that the medication in the bottle identified as Levetiracetam was actually the antibiotic Levaquin. (Id., p. 2.) The United States does not dispute that the pharmacist that filled the medication was an employee of the FBOP. The United States further concedes "negligence in that the pharmacist mistakenly filled the prescription with the wrong medication that was

7

subsequently given to the Plaintiff." (Id., pp. 3, 5 – 6.)

## THE STANDARD

**Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter

jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 *4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at

the summary judgment stage. Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. See Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## **DISCUSSION**

In its Motion, the United States argues that Plaintiff's claims must be dismissed, or in the alternative, summary judgment entered its favor. (Document Nos. 89 and 90.) The United States argues that under West Virginia law, a plaintiff bears the burden of proving negligence and that the lack of skill on the part of the health care provider caused the injuries suffered. (Id.) The United States further notes that expert testimony is required when a medical negligence claim involves an assessment of whether the health care provider was the proximate cause of the plaintiff's injuries. (Id.) The United States asserts that "[e]ven if an injury has occurred, if that injury is not causally linked by proper evidence to a breach in the standard of care by the plaintiff through expert witness testimony, then a plaintiff has not met his burden of proof under W. Va. Code § 55-7B-3, and judgment must be entered for the defendant." (Id.) The United States explains that Plaintiff had until March 24, 2023 to disclose his expert witnesses, but Plaintiff had failed to do so. (Id.) Accordingly, the United States requests that the Court grant its above Motion. (Id.)

In Response, Plaintiff first disputes the United States' statement that Plaintiff did not submit a sick call request until February 14, 2018. (Document No. 92.) Plaintiff states that he "submitted a sick call request long before 2/14/18, but that's how long it took for medical staff to

11

assess [his] complaints."[4] (Id.) Plaintiff further asserts that "the fact that many of [his] complaints of side effects do not appear in the medical records does not negate the possibility of those symptoms." (Id.) Plaintiff claims "[p]rison medical staff are frequently careless and will purposely fail to document things they feel will make them liable." (Id.) Second, Plaintiff appears to again object to the denial of his "Motion for Appointment of Counsel and/or for Appointment of Expert Witnesses." (Id.) Plaintiff states that he "cannot afford to hire a medical expert" and "[t]he District Court refused to appoint counsel or experts to assist [him]." (Id.) Plaintiff argues that "[t]he fact that the standard of care was breached and [he] was given the wrong meds should have been enough to appoint counsel and experts." (Id.)

The above action involves a medical negligence claim brought pursuant to the FTCA. An individual "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act

---

[4] In his Declaration, Plaintiff states that "[b]etween the dates of 1/30/2018 and 2/5/2018, I was given 5 doses of the incorrection medication." (Document No. 58.) Although Plaintiff states that he "submitted a sick call request long before 2/14/18," the earliest Plaintiff could have complained was January 30, 2018. The foregoing, however, is irrelevant for purposes of considering the United States' Motion.

occurred." Id. In the present case, Plaintiff alleges that the negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies and this Court must apply the West Virginia Medical Professional Liability Act ("WVMPLA") concerning Plaintiff's medical negligence claim. See Dreenen v. United States, 2010 WL 1650032, * 2 (4th Cir. 2010)("In West Virginia, the Medical Professional Liability Act controls medical malpractice claims.") West Virginia Code § 55-7B-3(a) provides as follows:

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
>
> > (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
> >
> > (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3. Generally, proof of medical negligence requires expert testimony. Bellomy v. United States, 888 F.Supp. 760, 763-64 (S.D.W.Va. 1995); also see Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964)("It is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses."). Specifically, expert testimony is required when a medical negligence claim involves a determination of whether a plaintiff was properly diagnosed or treated, or whether the health care provider was the proximate cause of the plaintiff's injuries. Banfi v. American Hospital for Rehabilitation, 207 W.Va. 135, 140, 529 S.E.2d 600, 605-06 (2000); also see Nottingham v. United States, 2017 WL 3026926, * 7 (S.D.W.Va. July 17, 2017)(J. Johnston)(dismissing case where plaintiff failed to provide expert testimony establishing a breach in the standard of care and that the alleged breach was the proximate cause of plaintiff's alleged injury); Wallace v. Community Radiology, 2016 WL 1563041, * 8 (S.D.W.Va. April 18, 2016)(J. Faber)(finding plaintiff failed

13

to meet her burden to establish proximate causation where there was no expert testimony supporting such and it was not the type of case where proximate causation was "reasonably direct or obvious"); Dellinger v. Pediatrix Medical Group, P.C., 232 W. Va. 115, 124-25, 750 S.Ed.2d 668, 677-78 (2013)(concluding that the lack of expert medical testimony as to causation was fatal to a medical negligence claim); Totten v. Adongy, 175 W.Va. 634, 640, 337 S.E.2d 2, 8 (1985)(distinguishing cases were expert testimony was unnecessary because causation was "reasonably direct or obvious"). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006).

      Plaintiff alleges that health care providers at FCI McDowell committed medical negligence when he was provided with the incorrect medication. Plaintiff alleges that the pharmacist dispensed the incorrect medication and the nurses (Nurse Walter, Dufour, and Alexander) provided him with the incorrect medication dispensed by the pharmacist. As a result of receiving five doses of the incorrect medication, Plaintiff alleges that he suffered numerous side effects.[5] This Court granted Plaintiff partial summary judgment on the sole issue that the FBOP's pharmacist committed negligence in violation of the applicable standard of care by improperly filling Plaintiff's prescription for Levetiracetam with the antibiotic Levaquin. Plaintiff, however, also has the burden of showing that the negligence was the proximate cause of his injuries. As already determined by this Court, even assuming Plaintiff suffered the alleged injuries, causation is not "reasonably direct or obvious" as to obviate the need for expert testimony. (See Document No. 78,

---

[5] Plaintiff alleged that the suffered the following: "light-headedness/faint, stomach pain, headaches, diarrhea, jaundiced/yellowed skin, pale stools, itching over entire body (no rash), and heart palpitations."

14

p. 15, fn. 3 and Document No. 87, p. 6.) Thus, expert testimony is required to show causation when an individual is prescribed or provided with an incorrect medication. (Document No. 87, pp. 4 - 5.); Hancock v. United States, 2023 WL 2674858, * 2 (S.D.W.Va. March 29, 2023)(J. Faber)(citing multiple cases in support). Clearly, it is not within the common knowledge of a lay person whether ingesting five doses of Levaquin over the course of seven days was the proximate cause of Plaintiff's alleged injuries. Although Plaintiff appears to reassert his objections that this Court denied his request for the appointment of counsel and/or expert witnesses, Plaintiff does not dispute that he failed to present an expert witness as to causation and damages. The undersigned further finds that Plaintiff had more than adequate time to do so. The initial deadline for Plaintiff to provide his expert witness was July 8, 2022. The undersigned, however, granted Plaintiff multiple extensions of time resulting in a final deadline of March 24, 2023 (more than 8 months). Since Plaintiff has failed to present an expert witness, Plaintiff is unable to establish that being provided the incorrect medication was the proximate cause of his alleged injuries. Accordingly, the undersigned respectfully recommends that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court District Court **GRANT** the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 89), and remove this matter from the docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 18, 2023.

Omar J. Aboulhosn
United States Magistrate Judge